IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
 : CRIMINAL ACTION
  v. : NO. 09-501
 :
JOHN R. JOHNSON :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.        MAY 26, 2010


**I. INTRODUCTION**

    Defendant John Johnson ("Johnson" or "Defendant") was charged in an Indictment with one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1 count) (Count II); one count of using and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count III); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count IV).

    The charges arose out of an incident on February 3, 2007, in Cheltenham Township, where Defendant allegedly distributed cocaine to an undercover police officer with a confidential informant. Defendant was later arrested on February 9, 2009, allegedly with a bag of cocaine and a firearm.

On March 22, 2010, a jury convicted Johnson of all charges. At the close of the Government's case, Johnson moved under Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal, which the Court denied (doc. no. 50). Johnson now moves for a judgment of acquittal or for a new trial under Rules 29(c) and 33 of the Federal Rules of Criminal Procedure. For the following reasons, the Court will deny the motion.

## II. LEGAL STANDARD

In deciding a motion for judgment of acquittal pursuant to Rule 29, a court must view all of the evidence introduced at trial in the light most favorable to the Government and uphold the verdict so long as any rational trier of fact "'could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)). "The court is required to 'draw all reasonable inferences in favor of the jury's verdict.'" Id. (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996)). The court may not "usurp the role of the jury" by weighing the evidence or assessing the credibility of witnesses. United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v.. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc); and 2A Charles A. Wright, Federal Practice & Procedure (Crim.3d) § 467,

at 311 (2000)).  Thus, the defendant bears an "'extremely high'"
burden when challenging the sufficiency of the evidence
supporting a jury verdict, United States v. Iglesias, 535 F.3d
150,155 (3d Cir. 2008) (quoting United States v. Lore, 430 F.3d
190,203-04 (3d Cir. 2005)), and the Government "may defeat a
sufficiency-of-the-evidence challenge on circumstantial evidence
alone," id. at 156 (citing United States v. Bobb, 471 F.3d 491,
494 (3d Cir. 2006)).  A finding of insufficiency therefore
"should 'be confined to cases where the prosecution's failure is
clear.'" Smith, 294 F.3d at 477 (quoting United States v. Leon,
739 F.2d 885, 891 (3d Cir. 1984)).

        Pursuant to Rule 33, the Court may grant a new trial
upon the defendant's motion "if the interest of justice so
requires." Fed. R. Crim. P. 33. "'Whether to grant a Rule 33
motion lies within the district court's sound discretion.'"
United States v. Ortiz, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000)
(citation omitted).  A court must grant a motion for new trial if
it finds that there were cumulative errors during the trial that,
"'when combined, so infected the jury's deliberations that they
had a substantial influence on the outcome of the trial.'" United
States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) (quoting
United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)).  In
evaluating a Rule 33 motion, the court does not view the evidence
favorably to the Government, but rather exercises its own

judgment in evaluating the Government's case. <u>United States v. Johnson</u>, 302 F.3d 139, 150 (3d Cir. 2002). "However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted.'" <u>United States v. Silveus</u>, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting <u>Johnson</u>, 302 F.3d at 150).

## III. DISCUSSION

### A. Jurisdiction

#### 1. Background

Before trial, the Court denied Defendant's motion to suppress the physical evidence based on the contention that the Cheltenham police lacked proper jurisdiction to arrest the Defendant in Philadelphia. (<u>See</u> doc. no. 45.) Again, Defendant argues that the Cheltenham police lacked jurisdiction to arrest him across the county line in Philadelphia. At trial, Cheltenham police officers claimed that several Philadelphia police officers helped them plan and execute the Defendant's arrest. Moreover, the affidavit of probable cause indicates that arrangements were made with the Philadelphia Police Department for the Cheltenham police to enter Philadelphia County. Defendant highlights that there was no corroborating evidence, by way of paperwork or testimony, that Philadelphia police officers consented to his

4

arrest in Philadelphia.

## 2. Legal Standard

The Municipal Police Jurisdiction Act ("MPJA"), 42 Pa. C.S. § 8953, authorizes <u>inter alia</u>:

Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S. § 8953(a).

The MPJA  is construed liberally. <u>See</u> <u>Commonwealth v.</u>

<u>Peters</u>, 915 A.2d 1213, 1222 n.2 (Pa. Super. Ct. 2007);

<u>Commonwealth v. McHugh</u>, 605 A.2d 1265 (Pa. Super. Ct. 1992).

Specifically, one of the principle objectives to be obtained by

this Act is to promote public safety while maintaining

jurisdictional police lines.

### 3. Analysis

In this case, the testimony at trial established that

the Philadelphia police consented to the Defendant's arrest by

participating in the organization and planning of the arrest.

Sergeant Regan, the officer who lead the investigation, testified

that he called the Philadelphia authorities and worked in

conjunction with them to effectuate the arrest. Accordingly, the

Cheltenham Police were acting within the "consent[] of the

organized law enforcement agency which regularly provides primary

police services in the municipality." 42 Pa.C.S. § 8953(a)(1).[1]

There is also a second and independent basis upon which

the Defendant's arrest was lawful. Section 8953(a)(6) of the

MPJA provides that a police officer may enforce state laws and

perform law enforcement functions outside of his primary

jurisdiction "[w]here the officer views an offense which is a

felony, or has probable cause to believe that an offense which is

a felony has been committed, and makes a reasonable effort to

---

[1]     Contrary to Defendant's assertions, there does not
appear to be a requirement that consent be given in writing.

6

identify himself as a police officer." § 8953(a)(6); see also

Commonwealth v. Phillips, 487 A.2d 962, 964 (Pa. Super. Ct. 1985)

("The legislature, recognizing the absurdity of territorial

limitations which require an officer . . . to stand by helplessly

as suspected robbers flee, enacted 42 Pa.C.S. § 8953(a)(6) to

grant police the power and authority to perform the functions of

their office by making arrests for felonies in neighboring

municipalities.") (authorizing a Cheltenham police officer to

cross the county line and make an arrest in Philadelphia County).

Based on the police observation of Defendant's narcotics exchange

with the confidential informant on February 3, 2007, the

Cheltenham police had probable cause to believe that Defendant

was committing a felony in attempting to distribute cocaine on

February 9, 2007.  Thus, the Cheltenham police did not violate

the MPJA when arresting Defendant in Philadelphia.  The Court did

not err in refusing to suppress the physical evidence.

Finally, to the extent the Defendant argues his

constitutional rights were violated if the Cheltenham police had

arrested him in violation of the MPJA, the Court notes that it is

well-established that "the Fourth Amendment is not implicated

simply because an individual violates state law." Armstead v.

Township of Upper Dublin, 347 F. Supp. 2d 188, 194 (E.D. Pa.

2004) (discussing an arrest outside the officer's jurisdiction in

apparent violation of the MPJA); see also, Baker v. McCollan, 442

U.S. 137, 144 (1979).  This case is similar to <u>Carter v. Bartle</u>, 1990 WL 156543 (E.D. Pa. Oct. 9, 1990), where the court held that unless police officers arrested the plaintiff without probable cause, "no constitutional right was implicated by the fact that [the officers] arrested plaintiff beyond the geographical boundaries of their primary jurisdiction" and, thus, in an alleged violation of the MPJA. <u>Id.</u> at *2.  A violation of the MPJA simply does not equal a violation of constitutional rights. <u>Id.</u>

## B. Confidential Informant

Defendant argues that the Court abused its discretion in denying the defense motion to produce the identity of the confidential informant and compel his identity (doc. no. 44).  He argues that the Cheltenham police had never used this confidential informant before, and revealing his identity would shed light on whether or not the police had sufficient probable cause to investigate and arrest Johnson.

### 1. Background on the Confidential Informant

The testimony at trial revealed that Officer Tom Fahy, acting in an undercover capacity, witnessed the transaction on February 3, 2007.  He was present as the Defendant approached the car, and was positioned in between the Defendant and the confidential informant when the transaction took place.  Officer Fahy, during the narcotics transaction, was also able to hear the

conversation between the Defendant and the confidential
informant.  Officer Fahy personally observed every element of the
Defendant's criminal activity in delivering the cocaine to the
confidential informant.  Along with Officer Fahy's observations,
surveillance was able to identify the Defendant as the only
individual that approached the confidential informant's vehicle
between the time it was searched and found free of contraband and
the time that it was re-searched by Cheltenham officers.

On February 9, 2007, the date the Defendant was
arrested, the plan established by the Cheltenham Police Officers,
was a "buy bust."  The plan was to arrest the Defendant when he
arrived to deliver the narcotics.  In anticipation of the
Defendant's arrival, surveillance and arresting officers went to
the location that the narcotics transaction was to take place.
At the agreed upon time and location, the Defendant arrived in
his vehicle.  The Defendant exited his vehicle and walked
directly towards the confidential informant.  Officer Fahy, who
was on the scene, identified the Defendant as the target and gave
the arrest and surveillance teams the signal to arrest.  Officers
from Cheltenham and Philadelphia moved in and arrested the
Defendant.

During the search of the Defendant by law enforcement
officers, a firearm was located in the Defendant's pants
waistband.  In the Defendant's hand, the police located the cell

phone used to set up both transactions.  In the carrying case for
the phone, police located cocaine.  At no time, other than over
the telephone, did the confidential informant have any contact
with the Defendant.  The confidential informant did not
participate in the arrest of the Defendant, nor was he present
when any of the evidence was recovered by the police.

### 2. Legal Standard

Courts have long recognized that effective law
enforcement and the protection of the public interest require
that the government be permitted, absent exigent circumstances,
to withhold the identity of informants.  See Roviaro v. United
States, 353 U.S. 53 (1957).  "The identity of an informant can be
disclosed where the defense makes an adequate showing that
disclosure is 'relevant and helpful to the defense' or 'essential
to a fair determination of a cause.'" Id. at 60-61.  "Where the
disclosure of an informer's identity, or of the contents of his
communication, is relevant and helpful to the defense of an
accused, or is essential to a fair determination of a cause, the
privilege must give way." United States v. Jiles, 658 F.2d 194,
196 (3d Cir. 1981), cert. denied 455 U.S. 923 (1982) (quoting
Roviaro, 353 U.S. at 60-61). "[O]nce a defendant sets forth a
specific need for disclosure the court should balance 'the public
interest in protecting the flow of information against the
individual's right to prepare his defense.'" Id. (quoting

<u>Roviaro</u>, 353 U.S. at 62).  The inquiry is case specific, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." <u>Id.</u> (quoting <u>Roviaro</u>, 353 U.S. at 62).

The defendant bears a heavy burden of establishing a need for disclosure of the confidential informant.  He must make a particularized showing that the informant can provide concrete material evidence that significantly aids the defense to establish a specific asserted defense. <u>Jiles</u>, 658 F.2d 197 ("mere speculation that an eyewitness may have some evidence helpful to the defense's case is not sufficient to show the specific need required by <u>Roviaro</u>."); <u>United States v. Brenneman</u>, 455 F.2d 809, 811 (3d. Cir.), <u>cert. denied</u>, 408 U.S. 923 (1972); <u>United States v. Bazzano</u>, 712 F.2d 826, 839 (3d. Cir. 1983)(en banc), cert. denied, 465 U.S. 1078 (1984).

### 3. Analysis

Defendant Johnson did not show a specific need for compelling the disclosure of the informant's identity that outweighed the public interest in allowing the informant to remain confidential.[2]  Defendant's mere speculation that

---

[2]     Absent this affirmative showing, courts repeatedly have refused to compel the government to disclose an informant's identity. <u>See, e.g.</u>, <u>United States v. Allen</u>, 566 F.2d 1193, 1194 (3d Cir. 1977); <u>United States v. Cantor</u>, 470 F.2d 890, 892 (3d Cir. 1972). <u>See also</u> <u>Rugendorf v. United States</u>, 376 U.S. 528, 533-36 (1964) (defendant not entitled to disclosure of informer's identity to attack search warrant as defendant failed

disclosure would be helpful to his defense is insufficient to override the Government's privilege. Here the informant's participation was peripheral. He was not in a position to contradict or amplify any of Officer Fahy's testimony upon which Johnson's conviction rests. The significance of the informant's testimony so far as Johnson was concerned was that a sale of cocaine supplied by Johnson took place. Officer Fahy already directly implicated Johnson and added reliable testimony about his arrest on February 9, 2007. See Brenneman, 455 F.2d at 811.

Defendant, relying on Spinelli, also argues the affidavit of probable cause to arrest was invalid, as it was based on the confidential informant's information but failed to state the basis for his reliability and veracity. Spinelli v. United States, 393 U.S. 410 (1969)

However, the Spinelli framework for determining when an informant's tip establishes probable cause was abandoned by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), and its progeny. The rigid "two-pronged test" under Spinelli for determining whether an informant's tip establishes probable cause

---

to establish that informer's identity was essential to establish his innocence at trial); United States v. Cerone, 830 F.2d 938, 947-48 (8th Cir. 1987); United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984); United States v. Lilla, 699 F.2d 99, 105 (2d Cir. 1983); United States v. Tham, 665 F.2d 855, 859-60 (9th Cir. 1981); United States v. Garcia, 625 F2d 162, 166 (7th Cir. 1980) (all holding defense not entitled to disclosure of informant identities and related information).

for issuance of a warrant is no longer the law, and the "totality of the circumstances" approach to probable-cause determinations was substituted in its place. <u>Illinois</u>, 462 U.S. 213, 214 (1983).

As already stated, the facts do not weigh in favor of the disclosure of the confidential informant, as little would be gained by revealing his identity. The Defendant has not shown how knowing the identity of the confidential informant would have changed the outcome of the trial, nor has he shown how the Defendant was prejudiced. The Court's denial of Defendant's motion to reveal the identity of the confidential informant was not an abuse of discretion.

### C. Prosecutorial Misconduct

Defendant argues prosecutorial misconduct in that the Government failed to produce certain items relevant to his defense. Specifically, he argues: (1) he was prejudiced because the Government informed defense counsel on the first day of trial of a new lab expert and report because the first lab technician was unavailable; (2) the Government failed to turn over a property receipt; (3) the Government failed to turn over information surrounding the search of the vehicle that the Defendant was traveling in when he arrived for the narcotics transaction on February 9, 2007 and (4) the Government failed to turn over chain of custody material in the form of evidence logs until the time of trial.

## 1. Legal Standard

Prosecutors "must refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). The Supreme Court has recognized prosecutorial misconduct may occur in a variety of factual settings, and each factual setting may in turn have its own peculiar standard for finding prosecutorial misconduct and determining whether a constitutional violation occurred as a result of such misconduct. See United States v. Williams, 504 U.S. 36, 60 (1992) (Stevens, J. concurring) ("like Hydra slain by Hercules, prosecutorial misconduct has many heads."); see, e.g., Mooney v. Holohan, 294 U.S. 103 (1935) (knowing use of perjured testimony was misconduct).

Generally, however, in order to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's statements and/or actions were actually improper, and that such improper statements or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." See Darden v. Wainwright, 477 U.S. 168, 180-81 (1986). In determining whether prosecutorial misconduct resulted in a denial of due process, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of

evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001) (citing <u>Darden</u>, 477 U.S. at 182).  The critical inquiry "is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).

**2. Analysis**

Defendant highlights several examples of carelessness on the part of the Government, but fails to show how he has been deprived of due process or how the trial's fairness was compromised.

First, that the Government failed to turn over a new laboratory report until the first day of trial did not unduly prejudice the Defendant.  The original laboratory report was authored by Darby Lanz.  Prior to trial, the Government learned Ms. Lanz had relocated out of state.  In anticipation of this objection, the Government had the narcotics evidence re-tested by a different laboratory technician from the same company.  The results from the original report, authored by Ms. Lanz, and the new report, authored by Amanda Andrews, were both presented to the jury.  Both reports are nearly identical except for a discrepancy of the weight of the drugs found, something that could not be explained by Ms. Andrews.

Despite this discrepancy, the Defendant has suffered no prejudice, as the drugs were tested by the same laboratory, using

the same procedures and they produced almost identical results. The Government avers it provided defense counsel with this new report as soon as it was received, the first day of trial.

Indeed, at trial, Defendant moved to exclude Ms. Andrews' testimony based on a similar objection. The Court denied the request but allowed Ms. Andrews to be interviewed by defense counsel before she testified and permitted wide-scoped cross examination. The Court considered the impact of the discrepancies between the two reports and held, "[t]he jury will be left to decide where the inconsistencies between the two lab reports are and the effect of alleged flaws in the chain of evidence."[3] (Doc. no. 49.) Accordingly, Defendant has not shown how he was prejudiced or denied due process by the late production of the second lab report.

Second, the Defendant complains that the Government failed to turn over a property receipt mentioned by Officer Fahy during the course of his testimony. Defendant fails to explain how he was prejudiced by the absence of this receipt. The property receipt at issue was more or less an inventory of items seized from the Defendant at the time of his arrest. Most of the items seized and inventoried were documented in other police reports, which were provided to defense counsel, well in advance of trial.

---

[3] The Court also agreed that the lesser weight of the drugs will be used by the Court for sentencing purposes.

Third, the Defendant claims the Government failed to turn over information surrounding a search of the vehicle that he was traveling in when he arrived at the arranged narcotics transaction on February 9, 2007. Defendant argues it was not disclosed that there was a warrantless search of the vehicle, thirty minutes after he was arrested, before the Defendant signed a consent to search. Accordingly, he argues he had no opportunity to file a motion to suppress at that time based on a Fourth Amendment violation under New York v. Belton. 453 U.S. 454, 457 (1981); Chimel v. California, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."); Thornton v. U.S., 541 U.S. 615, 620 (2004) (explaining that Belton "was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape").

Defendant's argument is meritless. Although his vehicle was searched, it yielded no inculpatory or exculpatory evidence, and therefore no report was done regarding the search of the vehicle. As already stated, the police recovered Defendant's weapon from his pants waistband and narcotics from his cell phone case. Defendant suggests that he had no notice of this search prior to trial and, if he did, he would have filed a

motion in limine to suppress the search of the vehicle.  However, since there is no evidence to suppress and the Government did not attempt to introduce any evidence from the search, there is no grounds to argue prejudice or a violation of due process.

Finally, the Defendant asserts that the Government failed to turn over chain of custody material in the form of evidence logs until the time of trial. The Government claims to have handed the chain of custody documents to defense counsel, after the supervising Sergeant certified that the files given to defense counsel contained all of the chain of custody documents. At trial, defense counsel admitted to having some, but not all, of these documents provided during discovery.  Additionally, defense counsel was given great latitude at trial to cross examine police officers on the chain of custody documents. Whatever merit there is to this claim, beyond some apparent carelessness of the part of the Government, Defendant fails to specifically explain how it prejudiced his defense.

The Court finds that the various challenged rulings were not errors, much less errors that, either individually or combined, would have a substantial influence on the outcome of the trial or constitute a miscarriage of justice.  Accordingly, Johnson's motion for acquittal and/or motion for a new trial is denied.

**D. Brady and Jencks Violations**

Defendant argues the Government failed to produce numerous items relevant to his defense and evaluation of the case.  These arguments mirror those discussed in the previous section on prosecutorial misconduct.

### 1. Legal Standard

"Due process requires the prosecution to inform the defense of evidence material to guilt or punishment." <u>Buehl v. Vaughn</u>, 166 F.3d 163, 181 (3d Cir. 1999)(citing <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)).  Likewise, "[t]he prosecution must also disclose evidence that goes to the credibility of crucial prosecution witnesses." <u>Id.</u> (citations omitted). In <u>Brady v. Maryland</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Lambert v. Blackwell</u>, 387 F.3d 210, 252 (3d Cir. 2004) (quoting <u>Brady</u>, 373 U.S. at 87).

"The Jencks Act provides that, after a government witness has testified on direct examination, the government must produce any statement of the witness in its possession "which relates to the subject matter as to which the witness has testified." <u>See</u> 18 U.S.C. § 3500.  Pursuant to Federal Rules of Criminal Procedure 26.2(f), a statement is defined to mean: (1) a written statement that the witness makes and signs, or otherwise

adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of recording; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." <u>U.S. v. Bell</u>, No. 08-03, 2009 WL 1506719, *5 (D. V.I. May 29, 2009).

### 2. Analysis

Johnson asserts several Brady and Jencks violations throughout his brief. For the same reasons as detailed in the section prosecutorial misconduct section, these claims have no merit. The Government has repeatedly denied and there is no evidence that the Government (including the Cheltenham police) withheld any inculpatory or exculpatory evidence from the Defendant prior to, at the time of or during trial. For the aforementioned reasons, the Defendant's motion must be denied.

### E. Sufficiency of the Evidence

Defendant argues the Government lacked sufficient evidence to prove each count in the indictment.[4]

---

[4]     In order support the Defendant's conviction on Count One, distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), the evidence must establish that: 1. The Defendant knowingly and intentionally possessed a controlled substance; and 2. The substance was cocaine; and 3. The cocaine was delivered to another person.

## 1. Analysis

Viewing the evidence introduced at trial in the light most favorable to the Government, as the Court must, the Court concludes that a reasonable jury could have found proof beyond a reasonable doubt that Johnson was guilty of all four counts.

The Court finds that the Government introduced sufficient evidence to support the Defendant's conviction. As shown at trial and discussed above, on February 3, 2007, Officer Fahy personally observed, and later testified to, every element of the Defendant's criminal activity in delivering the cocaine to the confidential informant. Along with Officer Fahy's observations, surveillance was able to identify the Defendant as

---

To support the Defendant's conviction on Count Two, possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), the evidence must establish that: 1. The Defendant knowingly and intentionally possessed a controlled substance; and 2. The substance was cocaine; and 3. The cocaine was possessed with the intent to distribute to another person.

To support the defendant's conviction on Count Three, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), the evidence must establish that: 1. The Defendant committed a drug trafficking crime for which the Defendant can be prosecuted in a court of the United States; and 2. During and in relation to the drug trafficking crime, the Defendant knowingly used or carried a firearm.

To support the Defendant's conviction on Count Four, convicted felon in possession of a firearm, in violation of 18 U.S.C. ' 922(g)(1), the evidence must establish that: 1. The Defendant was previously convicted of a crime punishable by imprisonment exceeding one year; and 2. The Defendant knowingly possessed a firearm; and 3. The firearm was possessed in interstate commerce.

the only individual that approached the confidential informant's vehicle between the time it was searched and found free of contraband and the time that it was re-searched by Cheltenham officers.  A test by an independent lab confirmed that the substance was in fact cocaine.

On February 9, 2007, Defendant possessed cocaine and was beginning a transaction when he was arrested by Philadelphia and Cheltenham Police Officers.  As explained earlier, the plan was to arrest the Defendant, when he arrived to deliver the narcotics.  In anticipation of the Defendant's arrival, surveillance and arresting officers went to the location that the narcotics transaction was to take place.  At the agreed upon time and location the Defendant arrived in his vehicle.  The Defendant exited his vehicle and walked directly towards the confidential informant, who had arrived at the location, under police surveillance and prior to the Defendant's arrival.  Officer Fahy, who was on the scene, identified the Defendant as the target and gave the arrest and surveillance teams the signal to arrest. Officers from Cheltenham and Philadelphia moved in and arrested the defendant.  A substance later identified as cocaine was found on the Defendant, as well as a Smith and Wesson, 9mm Luger semi-automatic pistol.

The circumstances surrounding the bust, and the amount of cocaine recovered from the Defendant's person, indicated the

Defendant possessed the cocaine with the intent to deliver.  The
Government offered expert testimony that the gun transferred in
interstate commerce and crossed state lines.  Furthermore,
Defendant stipulated that he had a felony conviction for an
offense with a maximum penalty of more than one year imprisonment
and therefore could not lawfully possess a firearm.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion will
be denied.  An appropriate order follows.