```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN R. JOHNSON,                :    CRIMINAL ACTION
                                :    NO. 09-501
         Petitioner,            :
                                :    CIVIL ACTION
    v.                          :    NO. 13-3067
                                :
UNITED STATES OF AMERICA,       :
                                :
         Respondent.            :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              August 13, 2014

    Petitioner John R. Johnson ("Petitioner") filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Following an evidentiary hearing, and for the reasons set forth below, the Court will deny Petitioner's § 2255 petition.

**I. BACKGROUND**

    On March 22, 2010, following a six day trial in the United States District Court for the Eastern District of Pennsylvania, a jury convicted Petitioner of one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count II); one count of using and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count III); and one

count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count IV).  The conviction arose out of an incident on February 3, 2007, in Cheltenham Township, where Petitioner distributed cocaine to an undercover police officer with a confidential informant.  Petitioner was later arrested on February 9, 2009, with a bag of cocaine and a firearm in his possession.

On April 29, 2011, Petitioner was sentenced to an aggregate of 120 months' imprisonment,[1] six years' supervised release, a $1,000 fine, and a special assessment of $400.  In May, Petitioner filed his notice of appeal.  ECF No. 94.  He appealed his conviction, arguing that (1) the Court violated Petitioner's constitutional rights and the Federal Rules of Criminal Procedure by questioning prospective jurors at sidebar outside his presence, (2) the Court abused its discretion in denying Petitioner's motion to disclose the identity of the confidential informant, (3) there was insufficient evidence to support a conviction on Count III, and (4) the Court erred at sentencing by imposing an upward variance.  United States v. Johnson, 677 F.3d 138, 141 (3d Cir. 2012).  The Third Circuit affirmed the judgment of the District Court.  Id. at 144.

---

[1] Petitioner was sentenced to sixty months' each on Counts I, II, and IV to run concurrently, and sixty months' on Count III to run consecutively to the other counts.  Petitioner was sentenced to six years' supervised release on Counts I, II, and IV, and to five years' supervised release on Count III.

Petitioner did not seek a writ of certiorari from the United States Supreme Court.

On June 5, 2012, Petitioner timely filed his pro se petition pursuant to 28 U.S.C. § 2255.  The Government was ordered to respond, Order, ECF No. 111, and the Government responded requesting that Petitioner be appointed counsel and an evidentiary hearing held, Gov't Resp., ECF No. 113.  The Court appointed Hope C. Lefeber, Esq., as counsel for Petitioner.  At a later date, the Court held an evidentiary hearing, at which Petitioner was represented by Ms. Lefeber, and during which the Court heard testimony from Petitioner and his trial counsel, Rania Major, Esq.  Petitioner's § 2255 petition is now ripe for resolution.

In his petition, Petitioner argues that he is entitled to relief on two grounds:

> (1)  Trial counsel was ineffective for failing to investigate possible defenses or potential sentencing enhancements in order to properly advise Petitioner of the benefits of a plea agreement; and
>
> (2)  Trial counsel was ineffective for failing to interview witnesses who could provide proof of an alibi at trial and thus ignored the potential for evidence that could have proven Petitioner's factual and legal innocence at trial.

ECF No. 110.

**II.   LEGAL STANDARD**

A federal prisoner "claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law. Id. An evidentiary hearing on the merits of a prisoner's claims is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. Id. § 2255(b). The court is to construe a prisoner's pro se pleading liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

A § 2255 petition can be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of

4

habeas corpus," "[t]he principles governing ineffectiveness should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 787 (2011)). The court's "scrutiny of counsel's performance must be highly deferential." Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006) (quoting Strickland, 466 U.S. at 689). Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689). In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Strickland, 466 U.S. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

5

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

**III. DISCUSSION**

At the evidentiary hearing, Petitioner, after conferring with Ms. Lefeber, decided not to proceed on his claim that Ms. Major was ineffective for failing to discuss the benefits of a plea agreement with Petitioner.[2]  Evidentiary Hr'g Tr. 31:20-33:12.  Therefore, all that remains is Petitioner's argument that Ms. Major, as his trial counsel, was ineffective for failing to interview certain witnesses and that Petitioner was prejudiced by their absence at trial.

---

[2]

```
     MS. LEFEBER:    Your Honor, we do wish to drop the claim
                     with regard to the plea negotiations.
     THE COURT:      Okay.  You have discussed that with Mr.
                     Johnson?
     MS. LEFEBER:    Yes, I have.
     THE COURT:      Mr. Johnson, are you in agreement?
     PETITIONER:     Yes, sir, Your Honor.
```

Evidentiary Hr'g Tr. 33:5-12

A.   The Evidentiary Hearing

At the hearing Petitioner summarized who the alleged witnesses were and the alleged alibi defense he wished to offer. Petitioner testified that the names he provided to Ms. Major were Anne Johnson, Marissa Johnson, Jamika Johnson, Brittany Johnson, Chenile Carson, Lashawn Henderson, Ricardo Maurice Johnson, T.C. Edwards, Shelly Edwards, and Weston Edwards. Petitioner credibly testified that each of these witnesses was related to him either by blood, by marriage, or as a blood relative of his daughter.  See Evidentiary Hr'g Tr. 36:14-17.

Petitioner claimed that on the day of the crime he was attending a funeral for Kokita Edwards, the mother of his eldest daughter. Petitioner stated that the funeral was in Prince Georges County, Maryland.[3] He testified that the funeral went from approximately 12:30 p.m. to 2:15 p.m. He stated that he next went to a repast at his brother's home until approximately 4:45 p.m. Next, he claimed he went to the home of his grandparents, Dolores and Ulysses Moore. Petitioner's grandparents live in Landover, Maryland,[4] and Petitioner averred that Petitioner arrived at their home around 5:15 p.m.

---

[3] Petitioner testified that the funeral was approximately two hours to two hours and fifteen minutes from Philadelphia, traveling by car.

[4] Petitioner claims that it would take him approximately two hours and fifteen minutes to drive from his Grandparent's home to Philadelphia.

7

Petitioner claimed that he spent the night in Maryland at the Moore residence.  Petitioner claimed that he provided this information to Ms. Major prior to the trial.  Evidentiary Hr'g Tr. 29:5-13.

Petitioner testified that Ms. Major had not discussed with him "whether or not she contacted anybody," but merely told him "they wouldn't be good alibis because they were relatives." Evidentiary Hr'g Tr. 29:14-21.  Petitioner also claimed that one of the potential witnesses, Jamika Johnson (Petitioner's daughter), informed Petitioner that Ms. Major had not previously contacted her or her grandparents.  Evidentiary Hr'g Tr. 29:23-30:11.

Ms. Major credibly testified as to her pre-trial discussions with Petitioner, her interactions with his alleged alibi witnesses, and her strategic decisions based on her reasonable professional judgment.  Ms. Major testified that on January 6, 2010 she met with defendant from 1:00 p.m. until 3:15 p.m.  Ms. Major credibly testified that Petitioner "told [her] that [after the funeral] he went to the Golden Corral Buffet and that was [Petitioner's] alibi."  Evidentiary Hr'g Tr. 42:2-5. Furthermore, Ms. Major credibly testified that Petitioner wanted a copy of the video surveillance tape from the Golden Corral to corroborate that he had gone there on the day of the crime. Evidentiary Hr'g Tr. 43:20-44:1.  Ms. Major stated that she did

8

not attempt to obtain any surveillance video for Petitioner's trial because, even if Petitioner could show that he was at the Golden Corral after the funeral, there was still more than enough time for Petitioner to have returned to Philadelphia and commit the crime, and thus it would not have worked as an alibi.[5] Evidentiary Hr'g Tr. 43:20-44:1.  Ms. Major credibly testified that Petitioner had not previously claimed that he had gone to his grandparents' home following the funeral.  Evidentiary Hr'g Tr. 42:7-13.

Ms. Major credibly testified that she contacted every potential witness that Petitioner provided to her.  Ms. Major admitted that she could not recall the name of every witness she contacted, but believably explained that she attempted to contact each witness provided by Petitioner and followed up on each lead. Specifically, Ms. Major credibly testified that she made multiple attempts to contact Jamika Johnson, but that Ms. Johnson did not respond to Ms. Major.  Evidentiary Hr'g Tr. 42:20-43:5

---

[5]     At the evidentiary hearing, Petitioner testified that, according to the police, the criminal activity occurred at around 6:00 p.m. in the evening.  <u>See</u> Evidentiary Hr'g Tr. 36:10-13.  Accordingly, Ms. Major explained that "the [criminal activity] took place somewhere after 5:30 p.m. and the . . . Golden Corral video . . . wouldn't have made a difference because there was over a four-hour time lapse."  Evidentiary Hr'g Tr. 43:18-44:1.

9

Finally, Ms. Major credibly testified that Petitioner, prior to trial, had told her that it was actually Petitioner's Brother, Germaine Johnson, who had committed the crime of which Petitioner was eventually convicted. Evidentiary Hr'g Tr. 47:14-48:23. In fact, part of Ms. Major's trial strategy, based on the information provided by Petitioner before trial, was to show the jury the physical differences between Petitioner and his brother and thus show that "it was [Petitioner's] brother [who committed the crime,] and they were confusing him with his brother." Evidentiary Hr'g Tr. 48:5-48:23. This testimony, as well as Ms. Major's trial strategy, clearly rebuts Petitioner's claim that his attorney failed to interview witnesses and put on an alibi defense and casts doubt on the credibility of the testimony which Petitioner gave at the evidentiary hearing.

B. Application

Petitioner's § 2255 petition fails as Petitioner's petition and testimony fail to show any deficient performance by his trial counsel, Ms. Major. The Court finds that Ms. Major truthfully and correctly described the information she possessed,[6] and the investigation she performed, prior to trial. Based on Ms. Major's testimony, Petitioner's testimony, and the other evidence available, the Court finds that, prior to trial,

---

[6] As provided by Petitioner and as otherwise known to her.

Petitioner did not tell Ms. Major that he had spent the night at his grandparent's home or that his brother was a potential alibi witness.  Instead, the Court finds that Petitioner initially told Ms. Major, as exculpatory theories, that he had gone to eat at a buffet and that his brother committed the crime.  Thus, Petitioner's testimony and petition fail to credibly allege any acts or omissions on the part of Ms. Major which were not pursuant to her reasonable professional judgment.  See Strickland, 466 U.S. at 690.  Accordingly, the Court finds that Ms. Major competently investigated those defenses raised by the information available to her prior to trial and her conduct meets the strong presumption that she provided reasonable professional assistance.  See Grant, 709 F.3d at 234.

Assuming, arguendo, that Petitioner could establish that, prior to trial, he provided the alleged alibi defense and witnesses to Ms. Major, and that she subsequently decided not to call those witness at trial, Petitioner would still not be entitled to relief.  According to Petitioner's own testimony, Ms. Major would have provided a reason within her reasonable professional judgment, namely that each witness was a "relative" of Defendant and thus would not be a useful alibi witness. Under a highly deferential review of Ms. Major's performance, see Douglas, 456 F.3d at 420, the Court would abide by the presumption that Ms. Major's decision fell within the wide range

11

of reasonable professional assistance.[7] See Grant, 709 F.3d at 234.

Accordingly, the Court will deny Petitioner's § 2255 petition as it fails to meet the first prong of the Strickland analysis for ineffective assistance of counsel.

## IV. CERTIFICATE OF APPEALABILITY

When a court issues a final order denying a § 2255 motion, it must also decide whether to issue a certificate of appealability. Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

---

[7] The decision of whether to call or not to call a witness at trial is "precisely that type of strategic trial decision that Strickland protects from second-guessing." Clark v. Klem, No. 02-2850, 2004 WL 534038, at *5 (E.D. Pa. March 10, 2004), citing Sanders v. Trickey, 875 F.2d 205, 212 (8th Cir.1989). Because the decision about whether to call a particular witness is strategic decision, there is a "strong presumption" that "counsel's decision not to call [a witness] was the result of sound trial strategy." Reinert v. Larkin, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002) (relying on Strickland, 466 U.S. at 689, for the proposition that the petitioner had not cited any law to overcome the strong presumption that counsel's decision not to call an officer was the result of sound trial strategy); see also Blount v. United States, 330 F. Supp. 2d 493, 497 (E.D. Pa. 2004) (Robreno, J).

further." Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011) (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)).

No basis for a certificate of appealability exists in this case, as Petitioner is unable to show that there is any room for disagreement among jurists of reason.

**V.   CONCLUSION**

For the foregoing reasons, Petitioner's § 2255 Motion is denied, and a certificate of appealability shall not issue.

An appropriate order accompanies this opinion.